UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MARY PAT TAYLOR, et al. | ) | |
|---|---|---|
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV1991 CDP |
| | ) | |
| AMERICAN AIRLINES, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

# **MEMORANDUM AND ORDER**

Plaintiffs Mary Taylor and Karen Marshall bring this suit against their union and their employer to challenge their seniority ranking within American Airlines.[1] Plaintiffs seek a declaratory judgment that their seniority rights are not governed by the collective bargaining agreement and assert claims against American Airlines and its corporate parent, A.M.R. Corporation, and the Association of Professional Flight Attendants. They allege breach of contract, breach of the duty of fair representation, and fraudulent misrepresentation under the Railway Labor Act and state common law.[2] Defendants move to dismiss plaintiffs' claims,

---

[1] Defendants' motions to dismiss were initially directed at plaintiffs' original complaint, however, plaintiffs have subsequently requested leave to amend their complaint. In response, defendants state that the arguments in their original motions are equally applicable to plaintiffs' proposed amended complaint. I will grant plaintiffs' motion to amend and treat the motion as if directed to the allegations in plaintiffs' amended complaint.

[2] In their complaint, plaintiffs alleged violations of the Labor Management Relations Act as well, but concede in their response that those claims are not valid.

arguing that plaintiffs' state law claims are preempted by the RLA and that plaintiffs' remaining claims are untimely. For the reasons stated below, I find that plaintiffs' common law claims are preempted by the RLA because they concern conduct that is actually or arguably governed by federal law, plaintiffs' RLA claims are untimely because they were filed more than six months after plaintiffs had reason to believe that American and the APFA had breached their duties under the RLA, and that plaintiffs' have failed to state a claim against AMR.

## Background

Plaintiffs' claims primarily relate to American Airlines' purchase of Trans World Airlines in 2001. Specifically, plaintiffs object to the way in which American Airlines assigned seniority to the TWA flight attendants after they were integrated into American Airlines' workforce. Before 2001, plaintiffs were employed by TWA and were represented by the International Association of Machinists. American Airlines discussed a seniority agreement with its own union, the APFA, and with the TWA flight attendants' union, IAM, throughout American's purchase of TWA. On March 9, 2001 American agreed with IAM to use its best efforts to preserve the TWA flight attendants' seniority after the merger.

The discussions regarding seniority resulted in two documents from late

2001 that specifically address the seniority integration of the TWA flight attendants. The first is a general agreement from September of 2001 between the APFA and American that includes a brief section regarding seniority. It states that seniority for flight attendants, in general, begins on the date on which they become employees of American. The second document is an "Agreement on Seniority Integration" between American and the APFA signed on December 7, 2001 that specifically addresses the seniority of the incoming TWA flight attendants. The seniority integration agreement states that the TWA flight attendants will be assigned a seniority date on the first day on which they were employed by American, despite their previous years of service. This agreement effectively placed all TWA flight attendants at the bottom of the seniority list. The seniority integration agreement states that it modifies the American Airlines/APFA collective bargaining agreement and becomes effective for the TWA flight attendants once they are officially represented by the APFA.

The former TWA flight attendants had become employees of American shortly before these agreements, on April 10, 2001, but they were not officially represented by the APFA until a later date, on April 19, 2002. Approximately one year later, on April 25, 2003 – after the TWA attendants were officially represented by the APFA – American and the APFA agreed to a restructured

collective bargaining agreement. This agreement did not modify the seniority integration agreement and the seniority integration agreement of 2001 continued to govern plaintiffs' seniority. The restructured collective bargaining agreement was amendable until September 4, 2009, but no amendments affecting seniority were implemented.

Since the 2001 seniority integration agreement, the former TWA flight attendants have been disproportionately affected by route reductions and furloughs. Plaintiffs allege that reductions-in-force in late 2002 and early 2003 effectively placed all of the former TWA flight attendants on furlough, while leaving the American Airlines flight attendants largely unaffected. Several other former TWA flight attendants have filed grievances and brought lawsuits in other courts challenging the seniority integration agreement from 2003 to the present.

The plaintiffs in this case did not take any action on this issue until 2008. Taylor formally objected to her seniority ranking on August 1, 2008 when she filed a claim with the Board of Adjustment. The APFA, however, withdrew her complaint on September 16, 2008. Taylor appealed on September 22 and the Review Committee upheld the union's withdrawal of Taylor's grievance on December 9, 2008. Taylor also requested arbitration with the APFA on June 7, 2009. On August 28, 2009 Taylor and Marshall requested information from the

APFA regarding the 2003 vote on the Restructuring Agreement. Plaintiffs did not file this action until December 4, 2009.

## Analysis

Defendants have moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and (6). A motion to dismiss challenges the legal sufficiency of the complaint. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Holden Farms, Inc. v. Hog Slat, Inc.*, 347 F.3d 1055, 1059 (8th Cir. 2003). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

1.  **Federal Preemption**

Defendants argue that plaintiffs' state law claims are preempted by the RLA as "major disputes" under the rule stated in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959).[3] Plaintiffs concede that defendants are subject to

---

[3] "[M]ajor disputes are those 'over the formation of collective agreements or efforts to secure them . . . . They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.'" *Union Pacific R. Co. v. Brotherhood of Locomotive Engineers and Trainmen General*, 130 S.Ct. 584, 591 n.1 (2009) (citing *Elgin, J. & E.R. Co. v. Burley*, 325 U.S. 711, 723 (1945)); *Cooper v. TWA Airlines*, 349 F. Supp. 2d 495, 502 (E.D.N.Y. 2004).

the RLA, but respond that their state law claims are not preempted by the statute because they do not conflict with the RLA, they do not require interpretation of a CBA, and because the administrative remedy for this dispute is not exclusive.

"Under *Garmon*, state-law causes of action are presumptively preempted where they concern conduct that is actually or arguably either protected or prohibited by federal labor relations law."[4] *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 321 (3d Cir. 2004); *see also Lindsay v. Ass'n of Professional Flight Attendants*, 581 F.3d 47, 57 (2d Cir. 2009). The RLA preempts potentially conflicting state causes of action even if the state law does not actually conflict with the federal law and regardless of the nature of the state law claim, whether it be tort, contract, or a specialized labor statute. *Lindsay*, 581 F.3d at 57. This rule, however, is subject to two exceptions. First, the act does not preempt claims that relate only to issues peripheral to federal labor law. *Id.* Second, the RLA does not preempt state law when the state law regulates important state issues, such as "violence and imminent threats to the public order." *Id.* To determine whether the state law claims seek to regulate conduct governed by the RLA, the court must compare the scope of the RLA with plaintiffs' claims. *See Lindsay*, 581 F.3d at

---

[4]The rule in *Garmon* was extended to the RLA by *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369 (1969).

58-59; *Bensel*, 387 F.3d at 321. The RLA explicitly governs bargaining concerning pay or working conditions. *See* 45 U.S.C. § 152; *Bensel*, 387 F.3d at 321.

Although plaintiffs' claims are for breach of contract, fraud, and breach of the duty of fair representation they all arise from, and are directed at, the bargaining process between American and the APFA regarding the flight attendants' working conditions. Plaintiffs' common law claims in this case are directed at remedying what they believe to be an unfair method of determining the seniority of American Airlines' flight attendants. Seniority, at least in part, determines rates of pay, work assignments, job stability, and other terms of a flight attendants' employment. The negotiations regarding plaintiffs' seniority are therefore governed by the RLA and the RLA presumptively preempts plaintiffs' common law claims.

Furthermore, plaintiffs' claims do not qualify for either of the exceptions to the rule in *Garmon*. Plaintiffs' claims are not directed at peripheral issues of federal labor law. The conduct at issue – negotiations between American and the APFA regarding the working conditions of its flight attendants – is central to the purpose of the RLA. Plaintiffs also do not allege that this case implicates any important state issue or that it involves a threat of violence. Therefore, plaintiffs'

state law claims against American Airlines and the APFA are preempted by the RLA.

In addition, to the extent that plaintiffs' argue that their claims should be analyzed under the preemption standard for minor disputes, instead of the standard for major disputes under *Garmon*, the RLA still preempts plaintiffs' state law claims.[5] A state law claim based on a minor dispute is preempted if it is inextricably intertwined with the terms of the labor contract. *See Bloemer*, 401 F.3d at 938-39; *Pittari v. American Eagle Airlines, Inc.*, 468 F.3d 1056, 1060 (8th Cir. 2006) ("Courts can resolve questions of federal . . . law involving labor claims only if the issues do not require the court to construe the collective bargaining agreement.") (quoting *Deneen v. Northwest Airlines, Inc.*, 132 F.3d 431, 439 (8th Cir.1998)). Since the state law claims in this case challenge the seniority agreement, which is explicitly incorporated into American Airlines' CBA, a resolution of this dispute would require this Court to interpret the labor contract. Therefore, plaintiffs' claims are preempted, even if analyzed as minor

---

[5]"[T]he term 'minor disputes' means, primarily, 'grievances arising from the application of collective bargaining agreements to particular situations.'" *Union Pacific R. Co. v. Brotherhood of Locomotive Engineers and Trainmen General*, 130 S.Ct. 584, 591 n.1 (2009) (citing *Union Pacific R. Co. v. Price*, 360 U.S. 601, 609 (1959)); *see also Bloemer v. Northwest Airlines, Inc.*, 401 F.3d 935, 938-39 (8th Cir. 2005).

disputes.[6]

> 2. **Statute of Limitations**

Defendants argue that plaintiffs' remaining claims are barred by the statute of limitations. Plaintiffs respond that their claims are not untimely and that the statute of limitations should have been tolled or restarted based on a variety of legal theories.

The time to file an RLA claim depends on the type of claim that plaintiff asserts. *See Russo v. American Airlines, Inc.*, 340 Fed. App'x 816, 818 (3d Cir. 2009). Plaintiffs' remaining claims under the RLA are for breach of the duty of fair representation, breach of contract, and a breach of the duty of fair dealing. When a plaintiff combines RLA claims against her employer and her union for breach of contract and breach of the duty of fair representation, respectively, it creates a "hybrid" suit. *See West v. Conrail*, 481 U.S. 35, 37 (1983). A hybrid suit must be filed within six months of the accrual of the claim. *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983); *Hunt v. Missouri Pacific R.R.*, 729 F.2d 578, 581 (8th Cir. 1984); *Russo*, 340 Fed. App'x at 818;

---

[6] Similarly, plaintiffs' claim for declaratory judgment is beyond this Court's jurisdiction as it requires an interpretation of the CBA, the seniority integration agreement, and the March 9, 2001 agreement between IAM and American Airlines, all of which concern the labor contract and plaintiffs' working conditions. Any interpretation of these documents must be resolved exclusively through the arbitration procedures described in the RLA. *See Gore v. Trans World Airlines*, 210 F.3d 944, 949 (8th Cir. 2000).

*Smith v. Gen. Comm. of Adjustment of Union Pac. E. Region, Intn'l*, 767 F. Supp. 1012, 1014-15 (E.D.Mo. 1991). An RLA claim for the breach of the duty of fair representation accrues when the plaintiff knew, or should have discovered, that the duty has been breached. *Russo*, 340 Fed. App'x at 818; *Smith*, 767 F. Supp. at 1015. In the context of seniority agreements, a claim for the breach of the duty of fair representation accrues when the plaintiff learns of the terms of the unfavorable seniority agreement and that the agreement will be put into effect. *Smith*, 767 F. Supp. at 1015.

Here, the facts alleged in plaintiffs' complaint demonstrate that plaintiffs' claims are untimely. Taylor and Marshall filed this suit on December 4, 2009. Therefore, in order to be timely, the cause of action under the RLA must have accrued no earlier than June of 2009. Plaintiffs do not dispute that they learned of the unfavorable seniority agreement no later than 2003. Indeed, accepting the allegations of plaintiffs' complaint, they had to have learned of the unfavorable seniority agreement by late April of 2003, at the latest, when the former TWA flight attendants were disproportionately furloughed. Therefore, under the general rule, plaintiffs' claims were filed several years too late.

Nonetheless, plaintiffs argue that their claims are not untimely because the

statute of limitations should be restarted with each new violation,[7] that the time period should begin from the denial of plaintiffs' request for arbitration, that the time period should be tolled because Taylor filed a grievance, and because plaintiffs' delay in taking action was in reliance on defendants' misrepresentations. Plaintiffs have not provided any relevant authority supporting their arguments and I do not find them persuasive. First, even if the limitations period were tolled after Taylor filed her grievance, the time to file would have expired approximately three years *before* Taylor began that process. Second, it is not plausible that the time to file an action should begin only after a request for arbitration, since Taylor has no right to pursue arbitration individually. *Martin v. American Airlines, Inc.*, 390 F.3d 601, 609 (8th Cir. 2004); *Sturge v. Northwest Airlines, Inc.*, Civil No. 07-499 JRT/JJG, 2009 WL 873140, at *4 (D. Minn. Mar. 30, 2009). Finally, plaintiffs have not identified any misrepresentations or statements made by American or the APFA that would reasonably justify plaintiffs' delay of nearly seven years in filing this action and so plaintiffs cannot

---

[7] Plaintiffs argue "new" violations rather than a "continuing violation," presumably because they must recognize that the continuing violation doctrine does not apply to RLA violations. But there is no difference between a "new" violation and a "continuing violation." In each theory, the statute of limitations would begin anew each time there is a new breach of duty. This theory does not apply to RLA claims, *see Rydzeski v. Burlington Northern*, 708 F.Supp. 1057, 1063 (D. Minn. 1989), therefore, plaintiffs' argument does not save their claims from the statute of limitations.

rely on a theory of detrimental reliance to toll the statute of limitations in this case. As a result, the general rule that an RLA claim for unfair representation and breach of contract must be filed within six months of the time the plaintiff knows the duty has been breached applies in this case and plaintiffs' claims under the RLA will be barred as untimely.

### 3. Claims Against AMR

Plaintiffs argue that, even if their claims against American Airlines and the APFA are invalid, it may still assert a common law claim for fraudulent misrepresentation against American's parent company, AMR, because AMR is not a "carrier" under the RLA and therefore its common law claims are not preempted by the federal statute. In their complaint, plaintiffs do not indicate any statements made by AMR. Instead plaintiffs identify American Airlines' officials or employees as the source of all of the alleged misrepresentations. Plaintiffs admit that American Airlines is a carrier under the RLA and subject to its provisions and therefore, as explained above, common law claims regarding its conduct in this case are preempted by the RLA. Having failed to provide any statements attributable to AMR that were not actually made by American – in which case the claim is preempted by the RLA – or any statements that were made by AMR independent of American Airlines – in which case plaintiffs have failed to state a

claim against AMR – I find that the complaint cannot support a claim against AMR for fraudulent misrepresentation.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for leave to file a first amended complaint [#28] is GRANTED.

**IT IS FURTHER ORDERED** that defendants' motions to dismiss [##17, 19] are GRANTED and the first amended complaint is dismissed with prejudice.

A separate judgment in accord with this Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 7th day of September, 2010.